492 So.2d 578 (1986)
James Alexander WILLIAMS,
v.
MISSISSIPPI STATE BAR ASSOCIATION.
Misc. No. 74.
Supreme Court of Mississippi.
July 30, 1986.
Lawrence W. Rabb, Meridian, for appellant.
Andrew J. Kilpatrick, Jr., Jackson, for appellee.
William E. Ready, Sr., Meridian, for amicus curiae.
Before HAWKINS, DAN M. LEE and ANDERSON, JJ.
DAN M. LEE, Justice, for the Court:
After pleading guilty to two (2) separate drug charges, James Alexander Williams entered into a consent order of disbarment with the Mississippi State Bar on March 13, 1981. As a condition of the order, Williams dismissed an appeal that he was taking on a third drug conviction.
On August 29, 1984, Williams filed his petition for reinstatement. The Board of Commissioners of the State Bar did not oppose the petition, but forwarded its investigation and report to this Court. Based upon the information in the report, this Court ordered a hearing on the petition, and appointed Retired Justice R.P. Sugg as Special Master for that purpose.
At the hearing held on December 10, 1984, Williams testified and presented eleven witnesses who testified in his behalf. The Board of Bar Commissioners presented no testimony; however, in closing argument, counsel for the Bar argued that Williams had not shown sufficient evidence for reinstatement. In his report, Retired Justice Sugg recommended that the petition for reinstatement be denied. Williams has appealed and assigns as error:
1) That he was denied due process in the hearing;
2) That he was denied reinstatement based on acts which were innocent when done, but which later became the subject of an adverse ethics opinion; and
3) That the Special Master impermissibly considered his religious beliefs as part of the denial of reinstatement.
On December 14, 1977, Kemper County authorities issued a warrant for the search of Williams' residence. The return on that warrant indicates that a large quantity of drugs was seized, forming the basis for the two (2) charges to which Williams pled guilty. After Williams' guilty plea and withdrawal of appeal of a third offense, he was sentenced to three years' imprisonment and served eight and one-half (8 1/2) months in the Lauderdale County Jail, as a trusty in the law library. Meridian attorney Roy Pitts sponsored his work release in 1981, and Williams worked for Pitts for some time as a paralegal, law clerk, and secretary. While employed by Pitts, Williams *579 did legal research and writing for several other attorneys. He had no contact with the general public, except in a secretarial capacity while working in Pitts' office.
When Pitts became involved in his own disciplinary proceedings, Williams terminated his employment and opened his own office. Initially, he had a sign on his door with his name and the phrase "Paralegal Services;" however, after learning that there was some concern about the sign, he removed it from his door.
Shortly after filing his petition for reinstatement, Williams became aware of Ethics Opinion Number 96, stating that it is improper for an attorney to employ a disbarred attorney in his office as a paralegal or law clerk. Williams was not working for another attorney at the time; nevertheless, he obtained copies of the opinion and circulated them to the lawyers for whom he had worked. Since then, he has not accepted employment in another attorney's office.
Williams' petition for reinstatement stated that he had rehabilitated himself, that he had kept abreast of legal developments, that he had assisted judges and lawyers as a paralegal, that he had earned enough to pay his own way as a citizen, that he had participated in civic and political activities in the community, and that he had paid the five thousand dollar ($5,000) fine which was imposed on him by the court.
Williams' testimony at the hearing outlined the various steps that he had taken since his release to rehabilitate himself and to maintain his knowledge of the law. He stated that he had used drugs on a social basis at the time he was arrested, but that he had ceased to use drugs, and had disassociated himself from his old friends. Since his arrest, he has had few close associates; he named only three who remained. While Williams' arrest record precluded him from membership in many civic organizations, he has served as a delegate to the democratic county and district caucuses, and has worked in judicial elections.
When Williams' attorney asked him about his involvement in church, Williams stated that he was not a member of any church, either prior to his disbarment, or after. "However, each Sunday I do tune into the religious broadcasts and I do take my dose of religion seriously. I read the Bible practically daily." Later in his testimony, the Special Master asked Williams "And you do not attend nor have you ever attended a church here since you have been practicing law?" When he replied that he had not, Williams was asked, "Do you have any good reason for not doing it?"
To demonstrate that his attitude had changed from the time he had been involved in drugs to the time of his petition for reinstatement, Williams gave the following testimony:
I don't think I was grown up. I don't think I was mature at the time. I think I had also lead a sheltered life in the educational system. I had gone to school or taught school all of my life. But since being punished I have  looking back, I am not coming to this conclusion now, I feel that the punishment I received was necessary. It was good for me and it has made me more mature. I feel like the system has worked through the application of criminal felony punishment to me. And I have expressed that to other people and I continue to express it.
Eleven witnesses appeared on Williams' behalf to support his reinstatement. Several of them were local attorneys who all testified to Williams' competence and ethical approach to the practice of law. The circuit judge who originally sentenced Williams attested to his rehabilitation. "When I observed him he was sober and he was courteous. He just seemed like a different person." The former sheriff of Lauderdale County, under whom Williams served his sentence, stated that he was in a position to know if Williams was still involved with drugs, and it was his opinion that he was not. The law librarian for Lauderdale County testified that Williams had been a great help to her in getting the library organized. She also thought that Williams "was very sorry, he was very humble and he would tell me daily. I could see it in his *580 speech or whatever. We would sit and he would talk to me and he was very concerned."
None of the witnesses admitted to any intimate friendship with Williams; indeed, most of them stated that they had no real contact with him at all, except in a professional capacity. However, several of the witnesses had observed Williams before and after his disbarment, and several of them had discussed his feelings about his conviction. Those witnesses all testified that Williams had exhibited remorse about his drug involvement, and had rehabilitated himself. Williams' supporters also presented to this court an amicus curiae brief, signed by forty-six (46) local attorneys who believe that "Mr. Williams does have sufficient good character to return to the practice of law among them...."
In his report recommending denial of Williams' petition for reinstatement, Retired Justice Sugg suggested that Williams had not met his burden of overcoming the former adverse judgment of his qualifications by persuasive evidence.
Petitioner has not brought in any witnesses who are intimately acquainted with him to present testimony pertaining to his present honesty, integrity, and moral standards. The three people who were in the best position to testify are the attorney for whom he worked for more than two years and his two best friends. Petitioner did not call any of these as witnesses.

I. DENIAL OF DUE PROCESS
Williams' first contention under this assignment is that Retired Justice Sugg erred in denying his petition for reinstatement on the grounds that he did not present testimony from his former employer and his two best friends. In defending his failure to call his former employer, attorney Roy Pitts, to testify, Williams points out that Pitts was, at the time of the hearing, embroiled in his own disciplinary proceedings. See Pitts v. Mississippi State Bar Association, 462 So.2d 340 (Miss. 1985). Apparently Retired Justice Sugg's reference to Williams' two best friends stemmed from Williams' testimony that the people who knew him best were James Brashier and Perry and Candy Gordan. The record shows that Brashier sent a letter to counsel for the bar, in which he supported Williams' petition for reinstatement. Thus, Williams did present evidence from one of his friends, and his failure to call Pitts was, under the circumstances, understandable. We also note that Roy Pitts supported Williams through his joining in the amicus curiae brief.
The requirements for reinstatement, as set out in Miss. Code Ann. § 73-3-337 (Supp. 1986), are that the petitioner provide "a concise statement of the facts claimed to justify restoration... ." This Court may order reinstatement if it is satisfied "that all material allegations of the petition for reinstatement are true and that the ends of justice will be served... ." Id.
Williams' petition alleges that he has rehabilitated himself. In determining whether he has shown rehabilitation by sufficient proof, we may look to the standard enunciated in Ex parte Marshall, 165 Miss. 523, 147 So. 791, 798 (1933):
We do not believe that it requires a long period to discipline and effect a rehabilitation of character. A firm resolve to live a correct life evidenced by outward manifestations sufficient to convince a reasonable mind clearly that the person has reformed is only required. In restoring a disbarred attorney, the principle question is whether that particular attorney would be safe to assist in administering justice, if readmitted... .
In our opinion, the testimony presented by Williams' eleven witnesses, when combined with the letters written in his behalf and the amicus curiae brief signed by forty-six attorneys, is sufficient to convince us that Williams has rehabilitated himself. This is particularly so in light of the complete absence of any evidence to the contrary. We, thus, hold that Williams has supplied this Court with enough proof of his reformed character to merit reinstatement. Phillips v. Mississippi State Bar, *581 427 So.2d 1380 (Miss. 1983). In light of this holding, we will only briefly address Williams' other contentions.
Williams also argues under this assignment that it was error to allow introduction of the search warrant of December 14, 1977, because it was outside the scope of the Special Master's order setting the reinstatement hearing. While it may be that this document exceeded the scope of Retired Justice Sugg's order, the return on the warrant was not the only evidence regarding the extent of Williams' drug involvement. Williams himself testified, as did Sheriff Keller, that some sixty (60) pounds of marijuana was found in Williams' possession. Thus, even if the introduction of the warrant was error, it was not prejudicial to Williams.

II. ETHICS OPINION NO. 96
Justice Sugg did not express an opinion on this issue, but recommended that this Court should write with reference to Ethics Opinion No. 96, which held that an attorney should not employ a disbarred or suspended attorney to work in his office. The issue is not properly before the Court at this time, since neither Williams nor his former employer, Roy Pitts, were disciplined for failure to abide by this Opinion. Therefore, we will reserve judgment on the matter until properly presented to the Court.

III. PETITIONER'S RELIGIOUS ACTIVITY
If Williams' failure to participate in an organized religion had been determinative of the denial of his petition for reinstatement, then his constitutional rights were violated. Wallace v. Jaffree, 472 U.S. 38, 105 S.Ct. 2479, 86 L.Ed.2d 29 (1985). That does not appear to be the case here, since it was Williams himself who initiated the subject. Furthermore, Retired Justice Sugg's opinion does not indicate that the issue influenced his recommendation. In any event, since we are ordering Williams' petition for reinstatement, we do not believe it is necessary to further address this assignment.

IV. CONCLUSION
Finding that the petitioner, James Alexander Williams, has shown sufficient proof of facts which would justify reinstatement, we hereby grant his petition and order his reinstatement to the practice of law in the State of Mississippi.
PETITIONER REINSTATED TO THE PRACTICE OF LAW.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and PRATHER, ROBERTSON, ANDERSON and GRIFFIN, JJ., concur.
SULLIVAN, J., not participating.