649 So.2d 825 (1995)
In re the Matter of the Reinstatement to Practice Law of Robert D. UNDERWOOD.
No. 94-BR-00173.
Supreme Court of Mississippi.
January 26, 1995.
*826 Robert D. Underwood, pro se.
Michael B. Martz, Jackson, for respondent.
En Banc.
PITTMAN, Justice, for the Court:

STATEMENT OF THE CASE
In Underwood v. Mississippi Bar, 618 So.2d 64 (Miss. 1993), this Court, pursuant to a proceeding filed by the Mississippi State Bar Association, suspended Robert D. Underwood [hereinafter Petitioner] for a period of one (1) year, beginning February 11, 1993.
Petitioner on February 18, 1994, filed with this Court, a Petition for Reinstatement to the Practice of Law, pursuant to Rule 12 of the Mississippi Rules of Discipline. In his Petition, Underwood has complied with the procedure regarding time for filing and contents of the petition. Rule 12.4 provides:
A suspended attorney shall not file a petition for reinstatement until the expiration of the period of suspension. In cases of suspension of six months or longer pending satisfaction of conditions precedent, the petition for reinstatement may be filed immediately upon the attorney's meeting these conditions.
The Mississippi Bar responded and filed an Answer to the Petition on April 15, 1994.
Upon examination of the record in the present case, we find that Petitioner has met the burden of convincing this Court that he has rehabilitated himself and now has the requisite moral character qualifying him for reinstatement. Moreover, Petitioner has been suspended at present for a period of nineteen months, seven months over and above the original twelve months suspension ordered. Finally, there is sufficient testimony and evidence in support of Petitioner's rehabilitation, including: 1) restitution to injured parties; 2) his employment relations subsequent to the disbarment; and 3) letters concerning his moral fitness. As the foregoing supports Petitioner's request for reinstatement, we hereby grant his petition on condition that Petitioner sit for and successfully complete the Multistate Professional Responsibility Examination and the ethics portion of the Mississippi Bar Examination.

STATEMENT OF THE FACTS

Facts Surrounding the Suspension
The relevant facts leading to Petitioner's suspension are set forth in Underwood v. Mississippi Bar, 618 So.2d 64 (Miss. 1993).

Petitioner's Activities Subsequent to the Suspension
In his deposition, Petitioner discussed his employment, pending litigation, activities, financial obligations, family and civic life. Petitioner discussed his employment during the suspension period and stated that he had been working for the Brookhaven Public School system as a substitute teacher and also doing construction and labor work. Petitioner stated that initially after the suspension, his income was derived from outstanding fees that were coming, and in May, he began doing construction work for various individuals. Petitioner began substitute teaching in January, 1994 and has sporadically been called to substitute, earning $45.00 per day. Petitioner stated that he had no other source of income.
Petitioner testified that he owed the I.R.S. approximately $5,000.00 in back taxes and his income for that year (1992) was between $50,000.00 and $60,000.00. He also discussed his upcoming 1993 return and that his wife grossed approximately $18,000.00 and he grossed approximately $7,000.00. Petitioner revealed that he had initiated two law suits in the Lincoln County justice court for collecting fees owed to him and he had obtained judgments in the amount of $1500.00.
Petitioner discussed the change in his earning capability and his financial obligations. His income had been reduced by *827 half and he owed: 1) $800.00 for his house note; 2) $350.00 for a car note; 3) $5,000.00 to the I.R.S.; 4) $2,500.00 for credit card debt; and 5) $3,000.00 in medical bills incurred when his son was in the hospital.
Petitioner is involved with the Brookhaven Little Theater and is a member of the Chamber of Commerce.
Petitioner stated that his actions were "flat wrong" and that he is facing up to what he did and taking responsibility for his actions. He also said he would not "put myself into a position like that again." Petitioner also believed that the suspension forced him to clear up certain problems that he had in the past in dealing with management and his other professional activities.
Petitioner said that he regrets that he contested the findings and recommendation of suspension of the tribunal and that his actions were wrong. Petitioner does not assert that he "deserves to be reinstated," only that he has met the requirements; he realizes that misleading his clients was wrong and states he states that he will never repeat that type of conduct.
In sum, Petitioner appears to have complied with the Rules of Discipline, namely Rule 12. The Mississippi Bar has answered and opposes the reinstatement. Accordingly, this Court must inquire as to whether Petitioner has satisfied certain conditions which are prerequisites to reinstatement.

LAW

Standard of Review
"The Supreme Court of Mississippi (the Court) has exclusive and inherent jurisdiction of matters pertaining to attorney discipline, reinstatement, and appointment of receivers for suspended and disbarred attorneys... ." Rule 1 of the Rules of Discipline for the Mississippi State Bar (1984). When reviewing disciplinary matters this Court "reviews the evidence de novo, on a case-by-case basis, sitting as triers of fact, and no substantial evidence or manifest error rule shields the Tribunal from scrutiny." Foote v. Mississippi State Bar Ass'n, 517 So.2d 561, 564 (Miss. 1987) (citing Hoffman v. Mississippi State Bar Ass'n, 508 So.2d 1120, 1124 (Miss. 1987); Vining v. Mississippi State Bar Ass'n, 508 So.2d 1047, 1049 (Miss. 1987); Mississippi State Bd. of Psychological Examiners v. Hosford, 508 So.2d 1049, 1054 n. 4 (Miss. 1987).

GUIDELINES FOR CONSIDERATION OF A PETITION FOR REINSTATEMENT
The guidelines for reinstatement to the Mississippi State Bar are set forth in Miss. Code Ann. § 73-3-337 and in Rule 12 of the Rules of Discipline for the Mississippi Bar. Rule 12 reads in pertinent part as follows:

Rule 12.7 Contents of Reinstatement Petitions ...
All reinstatement petitions shall be addressed to the Court, shall state the cause or causes for suspension or disbarment, give the names and current addresses of all persons, parties, firms, or legal entities who suffered pecuniary loss due to the improper conduct, the making of full amends and restitution, the reasons justifying reinstatement, and requisite moral character and legal learning to be reinstated to the privilege of practicing law. Upon filing, the petition shall be served on, and an investigatory fee of $500.00 shall be paid to the Bar, same to be in addition to any other sum due the Bar, or persons injured by the petitioner's improper conduct. The matters set out in this paragraph shall be jurisdictional.
Upon examination of the record, it appears that Petitioner has satisfied each of the "jurisdictional" requirements contained in Rule 12.7 of the Rules. However, the Bar contends that Petitioner has not produced the additional documents and copy of the affidavit as requested during the deposition and that Petitioner has not fully complied with this Court's order of suspension.
Mr. and Mrs. George Seymour and Mr. and Mrs. John Hebert were listed by Petitioner as the parties involved. Petitioner further alleges that there has been a full settlement made with the aforementioned parties. According to the record, restitution was not ordered by the tribunal or this Court and as stated above, there has been a settlement *828 with the affected parties. Apparently, the Heberts and Seymours each received $12,500.00. Petitioner alluded to counseling for alcohol and medication for depression. However, he is no longer on the medication and it appears that his concerns about using alcohol were tempered via the counseling he received. The letters written for Petitioner fully support his Petition.
Petitioner alleges that he has read and kept up with this Court's decisions by reading the advance sheets as well as law review articles at the Lincoln County Courthouse. He has not attended any CLE seminars since his suspension in February, 1993. Petitioner stated that if reinstated, he would not resume a full-time practice and that he had a job opportunity.
In support of his Petition, Mr. Underwood also discussed other justifications such as his moral fitness, family life and future plans. Petitioner is married to Sarah Gail Underwood and has one son Stone Roberts Underwood.
There are letters of recommendation from D. Ronald Musgrove, Mike Mills, Larry Speed and Ed Buelow, Jr., who have knowledge of Petitioner's previous and recent work experience as well as his family and personal life.
The Rules of Discipline provide a wide range of disciplinary actions which may be taken in response to attorney misconduct. The two which prohibit the practice of law, suspension and disbarment, are distinguished by the duration of the probation. In cases of suspension, the prohibition against the practice of law is for a fixed period of time. Rules of Discipline 8(b)(iii); but see Rule of Discipline 11.1 (indicating that a suspension can be for an indefinite period of time). In cases of suspension, the Rules of Discipline also provide that the Complaint Tribunal may specify conditions precedent to reinstatement. Rule 8(b)(iii).
In the matter sub judice, the Mississippi Bar opposes reinstating Mr. Underwood. As far as discipline is concerned, this Court has held that discipline "is ... to protect the public, the administration of justice, to maintain appropriate professional standards, and to deter similar conduct." Mississippi State Bar v. A Mississippi Attorney, 489 So.2d 1081 (Miss. 1986).
This Court has recognized that the misconduct giving rise to suspension differs from that giving rise to disbarment:
Implicit in the judgment of suspension, stopping short of disbarment, is that the attorney's character has not been shown so deficient that proof of general moral and professional rehabilitation is required.
Haimes v. Mississippi State Bar, 551 So.2d 910, 912 (Miss. 1989)
The suspended attorney seeking reinstatement has the burden of proving to this Court that he has the requisite moral character for reinstatement to the practice of law. Haimes, 551 So.2d at 912. The showing to be made for reinstatement seems inextricably bound to the nature of the original offense.
"Rule 12.6 requires that the Petition contain reasons justifying reinstatement. The Rule also requires that the Petitioner maintain the requisite moral character and legal learning to qualify for reinstatement." Burgin v. Mississippi State Bar, 453 So.2d 689, 691 (Miss. 1984).
This Court finds that Underwood has adequately explained his activity since disbarment and that he has minimally met the requirements of reinstatement.
As far as the listing of parties harmed and Underwood making amends, there is proof that this has been accomplished.
Additional cases dealing with petitions for reinstatement decided by this Court also prove to be helpful in determining whether a Petitioner has met the requisite standards. In Williams v. Mississippi State Bar Ass'n, 492 So.2d 578 (Miss. 1986), this Court discussed the standard used in reinstatement proceedings:
A court in such a proceeding, is not administering punishment; it is passing upon character. We do not believe it requires a long period to discipline and effect a rehabilitation of character. A firm resolve to live a correct life evidenced by outward manifestation sufficient to convince *829 a reasonable mind clearly that the person has reformed is only required.
Williams, 492 So.2d at 580.

CONCLUSION
Based on the foregoing, we find that Petitioner has met the burden of convincing this Court that he has rehabilitated himself and now has the moral character qualifying him for reinstatement. Moreover, Petitioner has been suspended at present for a period of nineteen months, seven months over and above the original twelve months suspension ordered. Given the absence of any specified conditions precedent to reinstatement, Underwood is entitled to reinstatement if this Court finds: 1) he has met the requirements of Rule 12.7 as to the content of his petition; and 2) he has carried the "burden of proving his case". There is testimony and evidence in support of his rehabilitation, including: 1) restitution; 2) his employment subsequent to the disbarment; and 3) letters concerning his moral fitness.
Therefore, we hereby grant the petition for reinstatement on condition that Petitioner sit for and successfully complete the Multistate Professional Responsibility Examination and the ethics portion of the Mississippi Bar Examination.
PETITION FOR REINSTATEMENT GRANTED ON CONDITION PETITIONER SIT FOR AND SUCCESSFULLY COMPLETE THE MULTISTATE PROFESSIONAL RESPONSIBILITY EXAMINATION AND ETHICS PORTION OF THE MISSISSIPPI BAR EXAMINATION.
DAN M. LEE, P.J., and SULLIVAN, BANKS, McRAE and JAMES L. ROBERTS, Jr., JJ., concur.
SMITH, J., dissents with separate written opinion joined by HAWKINS, C.J., and PRATHER, P.J.
SMITH, Justice, dissenting:
The majority has properly cited the correct legal standard to be applied in the case at bar, noting that it is this Court which has exclusive and inherent jurisdiction of matters pertaining to attorney discipline and reinstatement. It is the decision to reinstate Underwood, in spite of factual circumstances occurring subsequent to his suspension, which significantly relate in kind and in character to those events which caused this Court to suspend him from the practice of law, with which I disagree. Underwood has failed to meet the burden of proving that he has the requisite character for reinstatement, failed to demonstrate an understanding of the seriousness of the offenses for which he was suspended, and engaged in the unauthorized practice of law during suspension. All of these factors weigh against this Court's enumerated standard for granting reinstatement. Accordingly, I must dissent.
The Bar opposed Underwood's reinstatement petition stating that "the Bar's still concerned about the same thing the Mississippi Supreme Court was concerned, namely, Underwood's mental state." Answer to Petition, at p. 13 [emphasis in original]. The Bar also listed three instances whereby Underwood engaged in the unauthorized practice of law during suspension.
The Bar is correct in its concerns. Underwood has not satisfactorily met the burden of convincing this writer that he has fully rehabilitated himself and is now qualified for reinstatement. This Court's suspension was primarily based upon fraud and misrepresentation, both of which strongly relate to Underwood's character and truthfulness. Underwood clearly engaged in three incidents of the unauthorized practice of law. His feeble attempts at explaining the events away remind this writer of his original attempts to explain away the circumstances which caused his suspension. This poses the question; Has Underwood learned anything from suspension?
At the outset of his deposition, Underwood was asked whether he was involved in any type of civil litigation and he responded "no". However, it was subsequently revealed that malpractice claims had been filed against him immediately after the Tribunal's decision during the time that his appeal was pending before this Court. The malpractice suit, filed by the Heberts and Seymours, resulted in a substantial award, apparently paid by Underwood's malpractice carrier. Underwood stated *830 that there was no other litigation pending as of that time.
However, Underwood subsequently revealed that he had initiated two law suits in the Lincoln County Justice Court for collecting fees owed to him and he had obtained judgments in the amount of $1,500.00. He appeared confused when the Bar questioned him about the earlier discussion of whether or not there was pending litigation and stated that he understood that the initial question pertained to suits with him as a defendant.
The Bar was concerned with Underwood's mental state. Underwood stated that his original actions were "flat wrong" and that he is facing up to what he did and taking responsibility for his actions. He stated in depositions that he "would be crazy to put [himself] into a position like that again." Underwood further stated that he believed that the suspension forced him to clear up certain problems that he had in the past, "dealing with this sort of thing."
Finally, Underwood attempted to explain his actions by stating:
You can't say, well, because somebody else fudges here or they fudge there, it's not so bad that I do it. And that's the main thing. I've thought about it, you know, after I  like those two deeds I told you about, at the time I really didn't think there was anything wrong, because you know, as I said, we've got a guy that's not even a lawyer doing that sort of thing. But that was just rationalizing; and the more I've thought about it, ... the more convinced I became you shouldn't even  if it troubles you a little bit, you shouldn't do it.
Bar Dep., at 76-81.
Regarding the three incidents which lead to allegations of the unauthorized practice of law, the most serious one is the case of Henry Oliver, who ultimately filed a complaint with the Bar. Underwood had advised Oliver regarding a DUI but had not advised his client of his February, 1993 suspension until sometime in March of 1993. Underwood actually accompanied Oliver to court but did not go inside the courtroom. Underwood prepared Oliver's notice of appeal, appeal bond, and a letter (dated April 27, 1993), but according to Underwood, he was not paid a fee as Oliver had paid him $100.00 back in October, 1992, when the case originated. Underwood claimed that he did Oliver's paperwork as a favor. Underwood was admonished by the Committee on Professional Responsibility for using his letterhead and engaging in the unauthorized practice of law while suspended, all in violation of Rules 1.1, 5.5(a), and 7.1. Underwood's position is simply that he didn't consider his actions to be the unauthorized practice of law. Once again Underwood appears to be rationalizing his actions. It appears that Underwood once again is having problems "dealing with this sort of thing." Regardless, Underwood conceded that had he intentionally acted and engaged in unauthorized practice, he would not deserve to be reinstated. Underwood also admitted that preparing the two deeds, although not done with the intent to make money, was nevertheless wrong.
This Court, regarding discipline, has held that discipline "is not to punish the guilty attorney, but to protect the public, the administration of justice, to maintain appropriate professional standards, and to deter similar conduct." Mississippi State Bar v. A Mississippi Attorney, 489 So.2d 1081, 1084 (Miss. 1986). This Court, in Haimes v. Mississippi State Bar, 551 So.2d 910, 913 (Miss. 1989), stated:
[t]his Court has ultimate responsibility for the discipline of members of the Mississippi State Bar and for assuring that only those who adhere to the profession's high ethical standards are permitted the privilege of providing legal services to the public.
Id. at 913.
The suspended attorney seeking reinstatement has the burden of proving to this Court that he has the requisite moral character for reinstatement to the practice of law. Id. at 912. The showing to be made for reinstatement seems inextricably bound to the nature of the original offense. See Gautier v. Mississippi State Bar, 538 So.2d 772 (Miss. 1989).
Although the question of whether Underwood has met the burden of meeting the *831 requisite rehabilitative standard is somewhat subjective, his actions during suspension manifest a doubt in this writer's mind that he has indeed reformed. This Court in Williams v. Mississippi State Bar Ass'n, 492 So.2d 578 (Miss. 1986), in discussing the standard applied in reinstatement proceedings, stated:
A court in such a proceeding, is not administering punishment; it is passing upon character. We do not believe it requires a long period to discipline and effect a rehabilitation of character. A firm resolve to live a correct life evidenced by outward manifestation sufficient to convince a reasonable mind clearly that the person has reformed is only required.
Id. at 580.
This Court's recent case of In re Petition of David H. Massey, 633 So.2d 452 (Miss. 1994), held that Massey failed to present adequate and sufficient evidence to justify this Court granting his Petition for Reinstatement.
Underwood has not met his requisite burden. Because of his actions while under suspension, his character is certainly called into question once again. More serious, however, are the three incidents involving the unauthorized practice of law, which clearly exhibit additional violations of Rules 1.1, 5.5(a) and 7.1 of the Rules of Professional Conduct. These infractions, coupled with the admonition set forth in the letter from the Committee, weigh strongly against this Court's enumerated standard for granting reinstatement. The violations of these rules while under suspension is clearly the most serious aspect of the case at bar. Underwood has not demonstrated rehabilitation. To the contrary, we have seen a repeat performance by Underwood of incidents similar to his original actions, at the very worst, or alternatively, a lapse of good judgment with apparent inability to comprehend the seriousness of these matters. The need to protect the public remains, as it is obvious that Underwood's suspension should remain in full force with the effect to deter similar future conduct. This writer is not prepared to grant reinstatement at this time.
I respectfully dissent.
HAWKINS, C.J., and PRATHER, P.J., join this opinion.