987 So.2d 925 (2008)
In re the Matter of the REINSTATEMENT OF George T. KELLY, Jr., to the Practice of Law.
No. 2007-BR-00937-SCT.
Supreme Court of Mississippi.
February 7, 2008.
*926 Frank Carlton, attorney for Appellant.
Adam Kilgore, Jackson, attorney for Appellee.
EN BANC.
DIAZ, Presiding Justice, for the Court.

STATEMENT OF THE CASE
¶ 1. This is a petition for reinstatement to the practice of law filed by George T. Kelly, Jr. Kelly was suspended from the practice of law by a complaint tribunal for six months on September 22, 2006.

FACTS AND PROCEEDINGS BELOW
¶ 2. In July 2003, Joseph Triplett asked his family to hire George Kelly to represent him and file a petition for writ of habeas corpus in federal court. Kelly met with Joseph's sister, Carrie Triplett, and agreed to visit Joseph in prison and review the case in exchange for a $750 retainer fee. In December 2003, Kelly met with Carrie and Joseph's brother, Lee Triplett, and told them that he would be willing to file a petition for writ of habeas corpus on his behalf. Kelly charged the Tripletts a fee of $5,000 to file the habeas corpus petition. He requested that $2,500 (or $1,750, since $750 had already been paid as a retainer fee) be paid up front. The Tripletts sent Kelly a check for $1,750 and agreed to pay the rest of the $5,000 in monthly installments of $210.
¶ 3. According to the Tripletts, Kelly agreed to notify Lee and Carrie when the monthly payments were to begin. Kelly claims that it was his understanding that the Tripletts would begin paying the monthly installments immediately following the payment of the $2,500. In any event, Kelly never notified the Tripletts about beginning to make the monthly payments. Concerned about this lack of communication, Lee called Kelly's office and home many times between March and December 2004, but allegedly was able to speak to him only on two occasions. In December 2004, Kelly allegedly told Lee that there was nothing else to talk about and hung up the phone. Joseph sent many letters to Kelly's office inquiring about the status of his case, but received no response. Kelly allegedly failed to even respond to Joseph's letter terminating his representation and demanding the return of documents.
¶ 4. Kelly did travel to Leakesville, where Joseph was imprisoned, and met with Joseph on two occasions. Kelly told Joseph that he did not think that there was any possibility of winning the case and that Joseph should wait for new federal case law to come along that might increase the likelihood of prevailing on his petition. According to Kelly, he also notified the Tripletts on several occasions that he had not filed the petition. However, he never *927 told the Tripletts that he was not going to file the petition. Kelly's last communication with Joseph's family was a phone call he received from Carrie at his home around 8 a.m. He told her to never call his home again. Thereafter, Kelly met with Joseph a second and final time in August 2004.
¶ 5. During this period of time, Kelly was drinking heavily. He testified that he was drinking about three six-packs of beer per day. Although Kelly claimed that he only drank at night and never on the job, he admitted that his drinking negatively affected his ability to practice law: "[W]hat it did was that it caused me to not care about nor think seriously about the repercussions or results of what I was doing and not doing.... My only worry was whether other [sic] not I was going to be able to get through the day, get home, and have some more beer." He also admitted that his alcoholism played a large role in his failure to file Joseph's petition: "I did not file the petition-well, I told Joseph that I thought we ought to wait. The real reason was that I was drinking excessively and wasn't tending to my business." In his petition for reinstatement, Kelly states that his failure to file the habeas corpus petition was "the result of substance abuse."
¶ 6. Lee and his wife Wilma Triplett filed an informal Bar complaint against Kelly on March 3, 2005. Joseph filed his own informal Bar complaint on July 26, 2005. Copies of the complaints were sent to and received by Kelly, but he did not read the complaints or respond to the allegations. He did not respond to any request for information by the Office of General Counsel for the Bar and also failed to attend the investigatory hearing held as a result of the informal complaints.
¶ 7. Following the investigatory hearing, the Mississippi Bar filed a formal complaint with this Court, which then designated a complaint tribunal to hear and determine the matter pursuant to Mississippi Rule of Discipline 8(a). After being served with a copy of the Bar's formal complaint, Kelly filed an answer on December 27, 2005. A trial was held on August 21, 2006, but Kelly did not appear. The complaint tribunal found that Kelly had violated Rules 1.2(a), 1.3, 1.4, 1.5, 1.15(b), 1.16(d), 8.1(b), and 8.4(a) of the Mississippi Rules of Professional Conduct. On September 22, 2006, the tribunal suspended him from the practice of law for six months. The tribunal ordered that Kelly make restitution to the Tripletts in the amount of $2,500; that he reimburse Lee, Wilma and Carrie for the one day of wages they lost when they testified at the trial; that he pay $37.18 to the Bar along with costs and expenses of the investigation; that he return the case file to Joseph; that he take the Multistate Professional Responsibility Exam; and that he notify each of his clients of his suspension.
¶ 8. After being informed of his suspension by the court administrator for a local circuit judge, Kelly recognized that he needed help in battling his addiction to alcohol and checked himself into the Darden Center, an in-house treatment facility in Greenville. On November 20, 2006, Kelly successfully completed the treatment program and was discharged from the Darden Center with staff approval. Following his release from the Darden Center, Kelly voluntarily entered into a contract with the Mississippi Bar's Lawyers and Judges Assistance Program (LJAP) for a period of five years. Pursuant to that contract, Kelly agreed to, among other things, abstain from the use of any mood-altering substance, unless approved by a physician; to work a Twelve-Step Alcoholics Anonymous/Narcotics Anonymous (AA/NA) program, attending eighty meetings in the *928 ninety days subsequent to his release from the Darden Center and, thereafter, three meetings per week; and to submit to unannounced drug screenings.
¶ 9. Kelly has met those requirements. He has abstained from the use of all mood-altering substances since entering the treatment program at the Darden Center. During the first ninety days following his discharge, he attended one hundred and two AA meetings instead of the required eighty meetings. Kelly continued to attend approximately six AA meetings per week rather than the required three meetings. Kelly also submitted to two unannounced drug tests and passed them both. Following his discharge from the Darden Center, Kelly also complied with all of the sanctions imposed by the complaint tribunal.
¶ 10. Kelly remains an active participant in Alcoholics Anonymous and spends a significant portion of his time helping alcoholics in the Greenville area seek treatment. He has also become more actively involved in his church. Since his suspension, Kelly has kept abreast of changes in the law by reading the opinions handed down by the United States Supreme Court and this Court. Kelly concentrates mostly on criminal law, since his private practice was devoted primarily to criminal defense work. Kelly has a wealth of experience in the field of criminal law, having served as an assistant district attorney in the Fourth Judicial District for more than six years and a public defender in Washington County, Jackson County and Sunflower County for more than ten years. He was also president of the Mississippi Public Defenders Association for three years. If Kelly is reinstated, he plans to focus on criminal law and would consider becoming a public defender again.[1]
¶ 11. Kelly testified that his suspension from the practice of law was the "best thing that ever happened to [him]" because it forced him to acknowledge his alcoholism and seek treatment. He claimed that "going into treatment and being serious about Alcoholics Anonymous" saved his life. Kelly attached to his petition thirty-four letters of recommendation, all of which support his reinstatement. Thirty-two of the letters were written by attorneys and judges with whom Kelly has worked. All of those who wrote letters were aware of Kelly's suspension and the reason for it.
¶ 12. Pursuant to its duties, the Bar conducted an investigation into the merits of Kelly's petition for reinstatement. On July 30, 2007, the Bar filed its answer to Kelly's petition and recommended that Kelly be reinstated.

DISCUSSION

Standard of Review
¶ 13. This Court has "exclusive and inherent jurisdiction of matters pertaining to attorney discipline, reinstatement, and appointment of receivers for suspended and disbarred attorneys." In re Morrison, 819 So.2d 1181, 1183(¶ 12) (Miss.2001) (quoting In re Smith, 758 So.2d 396, 397 (Miss.1999)). We review the evidence in disciplinary matters de novo on a case-by-case basis as triers of fact. Id.
¶ 14. The reinstatement of suspended attorneys is governed by Mississippi Rule of Discipline 12. Burgin v. Miss. State Bar, 453 So.2d 689, 690 (Miss.1984). Rule 12 provides:

*929 (a) No person disbarred or suspended for a period of six months or longer shall be reinstated to the privilege of practicing law except upon petition to the Court.
(b) Reinstatement to the practice of law following any other discipline shall be only upon proof of compliance with any such sanctions.
Miss. R. Disc. 12. In determining whether to grant reinstatement, "[t]he Court's fundamental inquiry is whether [the attorney] has rehabilitated himself in conduct and character since the suspension was imposed." In re Steele, 722 So.2d 662, 664(¶ 6) (Miss.1998) (quoting In re Mathes, 653 So.2d 928, 929 (Miss.1995)). "The burden of proving that he has rehabilitated himself and re-established the requisite moral character sufficient to entitle him to reinstatement is upon the Petitioner." Burgin, 453 So.2d at 691 (citation omitted). A suspended attorney must demonstrate this by complying with the jurisdictional requirements of Rule 12. In re Benson, 890 So.2d 888, 890(¶ 5) (Miss.2004).
¶ 15. Five jurisdictional requirements apply to Rule 12 reinstatement petitions. Id. at (¶ 6). The petitioner must: (1) state the cause or causes for suspension or disbarment; (2) give the name and current address of all persons, parties, firms, or legal entities who suffered pecuniary loss due to the improper conduct; (3) make full amends and restitution; (4) show that he has the necessary moral character for the practice of law; and (5) demonstrate the requisite legal education to be reinstated to the privilege of practicing law. Miss. R. Disc. 12.7; Id. This Court considers the Bar's position as to reinstatement as a factor in determining whether to reinstate a suspended attorney. In re Holleman, 826 So.2d 1243, 1248(¶ 20) (Miss.2002) (citation omitted).

1. Cause for Suspension
¶ 16. In his petition for reinstatement, Kelly states the cause for his suspension: "The cause for suspension was inattention to matters for which Kelly was paid and specifically that he failed to file a federal habeas corpus petition after being paid to do that ... this inattention to the habeas corpus matter ... [was] a result of substance abuse[.]" Accordingly, Kelly has satisfied this jurisdictional requirement.

2. Pecuniary Loss
¶ 17. In his petition for reinstatement, Kelly provides the names and addresses of the persons who suffered pecuniary loss as a result of his misconduct. He lists Carrie, Lee and Wilma Triplett as the persons who suffered pecuniary loss and gives all three of their addresses. Kelly has satisfied this jurisdictional requirement.

3. Full Amends and Restitution
¶ 18. First, Kelly has made restitution to Carrie and Lee Triplett in the amount of $2,500 for the legal fees they paid him. Second, he has reimbursed Carrie, Lee and Wilma Triplett for the one day of wages they lost when they testified at the trial before the complaint tribunal. Third, he has paid the Bar a fee of $37.18 and an additional $896 for the costs and expenses incurred as a result of its investigation into the merits of his petition. Therefore, Kelly has satisfied this jurisdictional requirement.

4. Moral Character
¶ 19. Kelly has shown true remorse for his failure to file the habeas corpus petition on Joseph's behalf. Moreover, Kelly has recognized that he is an alcoholic and that his alcoholism was the primary cause of the misconduct that led to his suspension. He has sought treatment for his *930 alcoholism and successfully completed a six-week treatment program. He has also entered into a five-year contract with the Mississippi Bar's LJAP program. Thus far, Kelly has complied with all of the requirements of that contract, including working a twelve-step AA program and submitting to unannounced drug screenings. Since seeking treatment, Kelly has remained completely sober.
¶ 20. As a result of his experience in the treatment program and Alcoholics Anonymous, Kelly has become committed to helping other addicts seek treatment. To this end, Kelly remains an active participant in Alcoholics Anonymous, attending several meetings per week. He also tries to convince alcoholics in the Greenville community to enter treatment programs. Kelly also has become actively involved in his church.
¶ 21. All thirty-four letters of recommendation that Kelly attached to his petition assert that he possesses the necessary moral character for the practice of law. Furthermore, the fact that Kelly has spent a large portion of his career as an attorney defending indigents charged with serious crimes also suggests that he has the moral character needed for the practice of law. This Court finds that Kelly has satisfied this jurisdictional requirement.

5. Legal Learning
¶ 22. Kelly has kept up with developments in the law by reading the opinions of the United States Supreme Court and this Court on an almost daily basis. He focuses on criminal law because that is the area of the law in which he has specialized and in which he hopes to practice if reinstated. Kelly has also taken and passed the Multi-State Professional Responsibility Exam. We find that Kelly has demonstrated that he has the requisite legal education to be reinstated to the practice of law.
¶ 23. Kelly has satisfied the five jurisdictional requirements and complied with all of the sanctions imposed by the complaint tribunal. Accordingly, we find that Kelly "has rehabilitated himself in conduct and character[,]" Steele, 722 So.2d at 664(¶ 6), and demonstrated "[a] firm resolve to live a correct life evidenced by outward manifestation sufficient to convince a reasonable mind clearly that ... [he] has reformed[.]" In re Underwood, 649 So.2d 825, 828-29 (Miss.1995) (quoting Williams v. Miss. State Bar Ass'n, 492 So.2d 578, 580 (Miss.1986)).

CONCLUSION
¶ 24. For the foregoing reasons, we hold that Kelly's petition for reinstatement is granted.
¶ 25. PETITION OF GEORGE T. KELLY, JR., FOR REINSTATEMENT TO THE PRACTICE OF LAW IN THE STATE OF MISSISSIPPI IS GRANTED.
SMITH, C.J., EASLEY, CARLSON, GRAVES, DICKINSON, RANDOLPH AND LAMAR, JJ., CONCUR. WALLER, P.J., NOT PARTICIPATING.
NOTES
[1] He has a passion for providing legal representation to criminal indigents: "[H]elping people that can't afford a lawyer in the criminal field is what I love the most."