849 So.2d 843 (2002)
The Matter of the Petition for REINSTATEMENT to the Practice of Law OF William F. WATKINS.
No. 2001-BR-01894-SCT.
Supreme Court of Mississippi.
August 1, 2002.
Thomas M. Murphree, Jr., attorney for appellant.
Michael B. Martz, attorney for appellee.
EN BANC.
*844 SMITH, P.J., for the Court.
¶ 1. William F. Watkins was disbarred on November 6, 1991, following his pleading guilty to three felony counts of financial institution fraud and making false statements to influence the actions of a federally insured financial institution. Watkins has now petitioned the Mississippi Bar for reinstatement. The Mississippi Bar opposes his reinstatement.

FACTS
¶ 2. In 1991, William F. Watkins pled guilty to three counts of a six-count indictment in the U.S. District Court for the Eastern District of Louisiana for financial institution fraud and making false statements to influence the actions of a federally insured financial institution. His fraudulent transactions were extensions of his oil and gas exploration and production business in South Mississippi during the 1980s. Watkins was fined $10,000 and sentenced to spend six months in a halfway house. He was also ordered to pay restitution in the amount of $27,174.54 to Southeast National Bank of Hammond, Louisiana, and $107,335.00 to Pelican Homestead of Metairie, Louisiana, and he had to pay a mandatory assessment of $150.00. In addition, Watkins was required to perform 300 hours of community service, obtain approval from a probation officer before incurring new or additional credit, to provide a financial statement to the probation officer twice a year, and to report to the probation officer any transaction involving the sale of personal, familial, or business property. On November 6, 1991, this Court entered an order disbarring Watkins from membership in the Mississippi Bar and removed his privilege to practice law in Mississippi. Watkins v. Miss. Bar, 589 So.2d 660 (Miss.1991). Watkins complied with his sentence, paying the $10,000 dollar fine in full, spending time in halfway houses in Jackson and New Orleans, and completed his community service requirements. Watkins has paid the following restitution: $7,500.00 to Deposit Guaranty National Bank (now AmSouth Bank), $999.49 to First Bank of McComb, and $27,174.54 to Southeast National. The point of contention between Watkins and the Bar is whether he has paid Pelican Homestead Bank its full amount of restitution.
¶ 3. Pelican Homestead extended a line of credit in the amount of $135,000.00 to Watkins in 1983, and this line of credit is the main portion of the financial dealings that led to Watkins's criminal indictment and disbarment. Following his conviction, Watkins was ordered to pay restitution to Pelican Homestead in the amount of $107,335.00. However, he only paid Pelican Homestead $10,000.00 before the Bank became insolvent and was taken over by the Federal Deposit Insurance Corporation (FDIC).
¶ 4. On July 7, 1999, Watkins and the FDIC entered into an agreed compromise and settlement reducing Watkins's obligation to Pelican Homestead to $35,000.00. On July 12, 1999, the United States District Court for the Eastern District of Louisiana entered an Amended Judgment and Commitment Order amending that court's June 13, 1991, order to read "the defendant is to make restitution to the Federal Deposit Insurance Corporation to be paid in a single lump sum payment of $35,000.00 in the form of a cashier's check payable to the United States Department of Justice, within 45 days following entry of this order, or on August 23 1999, whichever date is later." This amount was paid by Watkins on August 23, 1999. Watkins's reasoning behind this settlement was that he never received credit for the amount realized by the bank on the oil and gas production fields that the bank received *845 when he defaulted on the loan; and therefore, the actual amount lost by the bank was significantly less than $107,335.00. The main issues in this case are whether the settlement agreement reached with the FDIC constitutes full restitution to a person or entity that was harmed by Watkins's wrongful conduct, and whether he still must pay the $97,335.00 (now $62,335.00) to Pelican Homestead.
¶ 5. Watkins's petition for reinstatement includes over thirty letters of recommendation from members of the Bar, residents of Pike County, the President of Southwest Community College, teachers at South Pike High School, and former South Pike High School Moot Court team members. Those letters detail Watkins's involvement in the community since his disbarment. One of the instances cited as evincing a rehabilitated moral character is Watkins's involvement with the South Pike High School Mock Trial team from 1991 to 1993. During his involvement with this team, he helped them to finish second in the state his first year, third in the nation at the national competition his second year, and to win the national championship his third year. Another community service that Watkins's petition points to is his involvement with the McComb Interdenominational Care Association's (MICA) Food Pantry. He notes to his increased involvement over the years with MICA, moving from financial contribution, to stocking food and preparing meals, to delivering firewood to the needy of Pike County. Those are the only two community involvements that Watkins cites to as evidencing a rehabilitated character.
¶ 6. The Court has also received two unsolicited letters opposing Watkins's reinstatement to the Bar, but those letters concern dealings between Watkins and his family members that occurred before he was disbarred. Since the opposing letters are not relevant to the question of whether Watkins has rehabilitated himself, this Court will not rule on the merits of those accusations.

BAR'S POSITION
¶ 7. The Mississippi Bar opposes Watkins's petition because it believes he has failed to demonstrate that he has met the necessary prerequisites for reinstatement: (1) he has not made full amends and restitution; and, (2) he has not demonstrated the requisite moral character to be reinstated.

STANDARD OF REVIEW
¶ 8. The standard of review in cases of attorney reinstatement to the bar is well settled:
The Supreme Court of Mississippi (the Court) has exclusive and inherent jurisdiction of matters pertaining to attorney discipline, reinstatement, and appointment of receivers for suspended and disbarred attorneys. When reviewing disciplinary matters this Court reviews the evidence de novo, on a case-by-case basis sitting as triers of fact.
In re Smith, 758 So.2d 396, 397 (Miss.1999) citing In re Pace, 699 So.2d 593, 595 (Miss. 1997).

DISCUSSION
¶ 9. The requirements for petitions for reinstatement to the Bar are:
All reinstatement petitions shall be addressed to the Court, shall state the cause or causes for suspension or disbarment, give the names and current addresses of all persons, parties, firms, or legal entities who suffered pecuniary loss due to the improper conduct, the making of full amends and restitution, the reasons justifying reinstatement, and requisite moral character and legal learning to be reinstated to the privilege *846 of practicing law. Upon filing, the petition shall be served on, and an investigatory fee $500.00 shall be paid to the Bar, same to be in addition to any other sum due the Bar, or persons injured by the petitioner's improper conduct. The matters set out in this paragraph shall be jurisdictional.
Miss. R. Discipline. 12.7. The burden of proving that he has rehabilitated himself and regained the requisite moral character sufficient to entitle him to reinstatement is upon the petitioner. In re Parsons, 797 So.2d 203, 205 (Miss.2000)(citing Burgin v. Miss. State Bar, 453 So.2d 689, 690 (Miss. 1984)). For reinstatement petitions, "the fundamental question to be addressed before reinstatement is the attorney's rehabilitation in conduct and character since the disbarment." Burgin, 453 So.2d at 691 citing Mississippi State Bar Ass'n v. Wade, 250 Miss. 625, 167 So.2d 648 (1964). To prove moral rehabilitation, the attorney must show "a firm resolve to live a correct life evidenced by outward manifestation sufficient to convince a reasonable mind clearly that the person has reformed." In re Underwood, 649 So.2d 825, 828-29 (Miss.1995). Disbarment "serves to help preserve the dignity and reputation of the legal profession and also ensures protection of the public from such conduct." In re Baker, 649 So.2d 850, 853 (Miss.1995).
¶ 10. While not applicable in this case, it is worth noting that this Court has recently amended Rule 12 of the Mississippi Rules of Discipline. The new amendment states that:
an attorney who has been disbarred for conviction of a felony criminal offense which occurred after April 4, 2002, in a court of this state or any other state, or a court of the United States for any felony crime a necessary element of which, as determined by a statutory or common law definition of the crime, involves interference with the administration of justice, false swearing, misrepresentation, fraud, deceit, bribery, extortion, misappropriation, theft, the sale or distribution of a controlled substance or an attempt, conspiracy or solicitation of another to commit such a crime, shall be ineligible for reinstatement to the practice of law.
Miss. R. Discipline 12(c) (as amended April 4, 2002). While this case deals with a conviction for just such a crime that occurred well before the effective date, it is worth publishing as notice to other attorneys. There is no need for this Court to reach the issue of whether Watkins has morally rehabilitated himself to the level that he may practice law again because the issue of whether Watkins has made complete restitution is jurisdictional and requires the denial of the petition.
¶ 11. This Court has addressed the reinstatement to the bar of an attorney who had been disbarred for embezzling clients funds. In re Morrison, 819 So.2d 1181, 2001 WL 954172 (Miss.2001). In that case this Court observed that "Morrison has failed to satisfy us that he has effectively rehabilitated himself.... In coming to this conclusion we note the seriousness of his offense. While the felony embezzlement charges were dismissed or nolle prosequied, these were felony level charges involving fraud, deceit, and dishonesty, which he also attempted to hide from an investigation." Id. Similarly, Watkins confessed to crimes of federal financial institution fraud and lying to a federally insured lending institution which, likewise, involved fraud, deceit, dishonesty, and behavior of the nature must be most strenuously defended against by the Bar.
¶ 12. We now consider the issue of whether Watkins has made full restitution. In defining what constitutes "full amends *847 and restitution" we apply the plain meaning rule. In re Baker, 649 So.2d at 853. This Court has held that the plain meaning rule required the disbarred attorney to "make complete and total restitution to all parties who suffered pecuniary loss." Id. Baker involved the issue of whether an attorney had to pay restitution to a bank that, subsequent to his disbarment, had merged with another bank. Id. at 854. This Court found there that "despite the fact that First Mississippi National Bank merged with the Bank of Mississippi, Baker still owes the money." Id. There is no reason to find in Watkins's case that the same standard would not apply to the FDIC's and Pelican Homestead's relationship.
¶ 13. Watkins's reliance on In re Pace is not instructive because there the disbarred attorney settled a pre-existing debt and negotiated a release from any future malpractice liability for an amount that was greater than the pecuniary loss suffered by the client. In re Pace, 699 So.2d at 596. Pace is not instructive because Watkins settled for significantly less, not more, than the original restitution award.
¶ 14. The major hurdle facing Watkins's petition for reinstatement is whether his compromise agreement with the FDIC meets the jurisdictional requirement that he has made full amends and restitutions to entities suffering pecuniary loss. Watkins maintains that the settlement agreement and order entered in the United States District Court for the Eastern District of Louisiana amounts to full restitution to Pelican Homestead. However, the Bar's argues that Watkins has failed to meet his burden of proof that he has made full financial restitution.
¶ 15. Petitioners for reinstatement to the Bar have the burden of proving that they have met all the jurisdictional requirements of Rule 12.7. The cursory order entered by the U.S. District Court in the Eastern District of Louisiana, by itself, does not satisfy this burden. Since the petitioner did not include any financial evidence that the $35,000.00 amount reached as settlement with the FDIC was equal to the financial liability incurred by Pelican Homestead, his burden has not been met. The petition does not include any evidence of the amount that Pelican Homestead realized off the oil and gas production, nor does it show any other reason Watkins was not liable for less than the $107,335.00. Watkins contends in his deposition taken by the Mississippi Bar that this amount reflects the financial loss incurred by the lending institution in his fraudulent dealings with them. However, the petitioner in reinstatement cases has a heavier burden than simple assertions. Watkins must submit proof of this assertion. Watkins claims that he never received credit for the amount realized by the bank on the oil and gas production fields that the bank received which Watkins defaulted on the loan. However, he offered no proof of this claim. Until Watkins can present evidence that the amount agreed upon with the FDIC represents the financial loss that Pelican Homestead actually suffered, his burden has not been met.
¶ 16. Therefore, since the petitioner has failed to meet the jurisdictional requirement of Rule 12.7 that he has made full restitution to entities suffering a pecuniary loss by his actions, his petition must be denied.

CONCLUSION
¶ 17. The petitioner for reinstatement has the burden of proof to show that he has met all the jurisdictional requirements of Rule 12.7. Until Watkins can prove that the financial loss suffered by Pelican Homestead is equal to the amount of restitution paid to the FDIC, he has failed to *848 meet his burden of proof. Therefore, his petition for reinstatement to the practice of law is denied.
¶ 18. PETITION FOR REINSTATEMENT TO THE PRACTICE OF LAW DENIED.
PITTMAN, C.J., WALLER, COBB, DIAZ, CARLSON AND GRAVES, JJ., CONCUR. EASLEY, J., CONCURS IN RESULT ONLY. McRAE, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION.
McRAE, P.J., Dissenting:
¶ 19. Because the majority errs in finding on this record that Watkins has not made restitution, I respectfully dissent.
¶ 20. Pelican Homestead Bank ultimately became insolvent and was taken over by the FDIC, putting the FDIC in the shoes of the bank. The federal court had originally ordered $107,335.00 in restitution. However, an amended order was entered reducing the amount of restitution from $107,335.00 to $35,000.00,after the FDIC and Watkins reached a compromise and settlement in that amount. Watkins paid the $35,000 as ordered. Since the federal court entered the order, all parties agreed that the figure in controversy was $35,000.00, and the FDIC, the only remaining party involved, has been satisfied as agreed and as ordered by the federal court, one can only ask to whom or where is Watkins to pay any additional money?
¶ 21. This Court has granted a petition for reinstatement even though the petitioner, Baker, had not yet made "full amends and restitution." In re Baker, 649 So.2d 850, 854 (Miss.1995). There, the parties to the controversy that led to Baker's disbarment disputed an amount due as part of restitution. Here, there is no longer any dispute between the remaining parties, the FDIC and Watkins, as to any remaining restitution due. The parties agreed on a settlement amount, the federal court accepted the compromise, and Watkins paid that amount. Restitution has been satisfied. I, therefore, dissent as to this issue.