RANDOLPH, Justice,
 

 for the Court.
 

 STATEMENT OF THE PROCEEDINGS
 

 ¶ 1. Attorney Kerry L. Prisock was suspended from the practice of law by a com
 
 *320
 
 plaint tribunal for three consecutive, eighteen-month periods for separate violations. Pursuant to Mississippi Rule of Discipline 12, Prisock is before this Court seeking reinstatement to the practice of law. Under Mississippi Rule of Discipline 12.8, the Board of Bar Commissioners directed an investigation into Prisock’s Petition for Reinstatement.
 
 [1]
 
 After a preliminary investigation, a hearing was conducted. The Mississippi Bar (“the Bar”) filed an answer supporting Prisock’s reinstatement.
 

 ¶ 2. Finding the investigation to be lacking in substantive proof, the parties were ordered to supplement the record within forty-five days. The parties supplemented the record accordingly.
 

 ¶ 3. Prisock and the Bar were granted an opportunity to review the supplemental documents, and the Bar was ordered to conduct further investigation. The order stated in pertinent part,
 

 Prisock shall have twenty (20) days from the entry of this Order to file an amended petition with attachments or to affirm his previously filed petition and attachments.
 

 Upon the filing by Prisock, the Bar shall then have thirty (30) additional days to conduct further review and investigation and file an amended response or to affirm its previously filed response.
 

 ¶ 4. The Bar filed a motion for additional time to depose Prisock. This motion was granted, and his deposition was taken tele-phonieally on January 29, 2008. On February 22, 2008, the Bar filed an amended answer recommending the reinstatement of Prisock.
 

 BASES FOR SUSPENSION
 

 ¶ 5. Prisock’s suspensions stemmed from three separate incidents in which Prisock violated various Mississippi Rules of Professional Conduct:
 

 ¶ 6. In Cause Number 93-B-00697, Pri-sock was charged with violating Mississippi Rules of Professional Conduct 1.3 and 1.4(a) in his representation of Mr. and Mrs. Lester Rainey. Prisock undertook representing the Raineys in a bankruptcy matter. While the Raineys’ bankruptcy matter was proceeding, Prisock converted the Raineys’ Chapter 13 bankruptcy to a Chapter 7 bankruptcy. The motion to convert resulted in the Raineys’ bankruptcy proceedings being dismissed. Approximately six months passed before Prisock became aware that the proceedings had been dismissed. Once he gained knowledge, he failed to file the necessary motions to have the proceedings reinstated, and failed to advise his clients of this development. The Raineys’ employers were served with garnishment papers on three occasions by the Covington County Sheriff. Prisock testified that the Raineys suffered no financial loss due to his failure to file, but he did acknowledge they suffered stress and embarrassment.
 

 ¶ 7. Prisock testified that “personal issues clouded my judgment. I didn’t pay the attention to my cases that I should have.... I owed those clients more than I ... gave them.... ” Prisock blamed his lack of attention on personal problems and related that he “probably drank more than I would normally have done.”
 

 
 *321
 
 ¶ 8. A complaint tribunal found Prisock guilty of violating Mississippi Rules of Professional Conduct 1.3 and 1.4(a). Prisock was suspended from the practice of law for eighteen months. Pursuant to Mississippi Rules of Discipline 17 through 25, Prisock was also placed on disability status, was ordered to participate in a substance-abuse program and to complete a program of therapy.
 

 [[Image here]]
 

 ¶ 9. In Cause Number 93-B-00950, Pri-sock was charged with violating Mississippi Rules of Professional Conduct 3.3(a)(4), 3.4(b), and 4.1(a) and (b). In the underlying case which precipitated the complaint, Prisock was assisting another attorney, Jesse B. Goodsell. Prisock notarized a motion for temporary restraining order filed by Goodsell’s client, Herschel Woodward. Prisock certified that the document was executed by Woodward. Chancery Court Judge Stuart Robinson entered a temporary restraining order, in reliance upon the sworn document. Subsequently, the opposing party filed a motion to dissolve the temporary restraining order, alleging Woodward’s signature was forged and sought sanctions against both Goodsell and Prisock.
 

 ¶ 10. Chancellor Robinson conducted a hearing to determine the authenticity of the signature and notarization by Prisock. A signature expert opined that the signature was not Woodward’s, but was likely that of Goodsell. To counter this evidence, Goodsell called Prisock as a witness. Pri-sock falsely testified he witnessed Woodward sign the document. Prisock further amplified his testimony by falsely testifying the document was signed by Woodward using his left hand, as Prisock recalled Woodward had had a cast on his writing hand, the right hand.
 

 ¶ 11. Following a recess of that hearing, Goodsell approached the chancellor and admitted to signing Woodward’s name on the document. When the hearing resumed, Goodsell testified to same. Prisock was recalled to the stand and recanted his perjurous testimony. Prisock then said that while he was not aware that Goodsell had signed the document, he actually observed Woodward sign the document, although hedging his testimony with the statement that he thought Woodward did. Following the hearing, the chancellor barred Goodsell and Prisock indefinitely from practicing in the Fifth Circuit Chancery Court District, First Division.
 

 ¶ 12. The complaint tribunal found Pri-sock violated Mississippi Rules of Professional Conduct (a)(4), 3.4(b) and 4.1(a) and (b). The tribunal imposed an eighteen-month suspension to run consecutively with the eighteen-month suspension in the Rainey matter, and also placed Prisock on disability status according to Mississippi Rules of Discipline 17 through 25.
 

 [[Image here]]
 

 ¶ 13. In Cause Number 93-B-1034, the complaint tribunal found Prisock violated Mississippi Rules of Professional Conduct 1.3 and 1.4(a) in his representation of T.B. in a paternity matter.
 
 [2]
 
 A hearing took place in November 1992, in which the father admitted the minor child was his son and agreed to pay to T.B. child support of $100 a month, as well as to provide medical insurance for the child. Prisock stated to the chancery court that he would draft an order reflecting same and submit the order to the chancellor and clerk for filing.
 

 ¶ 14. T.B. testified she tried to contact Prisock at his office, but was not able to reach him until two weeks after the hearing. When T.B. finally spoke with Prisock, Prisock told her he did not remember
 
 *322
 
 agreeing to draft the order, but he would check his file. When T.B. again did not hear from Prisoek, she again contacted him. Prisoek assured her he would prepare and file the order. After receiving this assurance from Prisoek, T.B. did not hear from Prisoek, despite making repeated calls to his office and finally sending him a letter.
 

 ¶ 15. In February 1993, the order still had not been entered. T.B. contacted Pri-sock’s office and scheduled an appointment which Prisoek subsequently cancelled. As of the date of Prisock’s hearing before the complaint tribunal, the child’s father had provided neither support nor medical insurance.
 

 ¶ 16. The complaint tribunal found that Prisoek violated Mississippi Rules of Professional Conduct 1.3 and 1.4(a) and suspended him for eighteen months, to run consecutively with his previous suspensions. The tribunal placed Prisoek on disability status pursuant to Mississippi Rules of Discipline 17 through 25, and Prisoek was required to participate in a substance-abuse program and complete a therapy program.
 

 ¶ 17. In addition to his suspension and participation in a substance-abuse program, Prisoek also was ordered to pay restitution to T.B. in the amount of $100 a month for twelve months. The Bar stated in its answer to this proceeding that Pri-sock had made full restitution to T.B.
 

 ¶ 18. The waiting period within which to apply for reinstatement as mandated by Mississippi Rule of Discipline 12.2 has been met. Prisoek now seeks reinstatement to the practice of law.
 

 STANDARD OF REVIEW
 

 ¶ 19. This Court has “exclusive and inherent jurisdiction of matters pertaining to attorney discipline [and] reinstatement. ..M.R.D. 1(a). This Court reviews “ ‘petitions for reinstatement de novo. We also sit as trier of fact and therefore are not bound by substantial evidence or manifest error rules.’ ”
 
 In Re Baldwin,
 
 890 So.2d 56, 58 (Miss.2003) (quoting
 
 In Re Parsons,
 
 849 So.2d 852, 854 (Miss.2002)).
 

 ANALYSIS
 

 ¶ 20. Pursuant to Mississippi Rule of Discipline 12 and this Court’s decision in
 
 In Re Benson,
 
 an attorney must meet five requirements before he or she may be reinstated. As set forth in
 
 Benson,
 
 the following factors are required of the petitioner:
 

 (1) state the cause or causes for suspension or disbarment; (2) give the name and current address of all persons, parties, firms or legal entities who suffered pecuniary loss due to the improper conduct; (3) make full amends and restitution; (4) show that he has the necessary moral character for the practice of law; and (5) demonstrate the requisite legal education to be reinstated to the privilege of practicing law.
 

 In Re Benson,
 
 890 So.2d 888, 890 (Miss. 2004).
 

 ¶ 21. Furthermore, the burden rests with Prisoek to demonstrate by clear and convincing evidence that he has been sufficiently rehabilitated and possesses the requisite moral character to be reinstated to the practice of law.
 
 See In Re Coleman,
 
 949 So.2d 680, 683 (Miss.2006);
 
 Benson,
 
 890 So.2d at 890;
 
 In Re Baldwin,
 
 890 So.2d 56, 58 (Miss.2003);
 
 In Re Holleman,
 
 826 So .2d 1243, 1246 (Miss.2002).
 

 THE REINSTATEMENT PROCEEDING
 

 ¶ 22. The supplemental documents contain substantial facts not addressed by Pri-sock’s petition or the Bar’s answer. The
 
 *323
 
 supplemental documents and comments gleaned from the deposition of Prisock suggest the Bar was misinformed or misled regarding Prisock’s “road to rehabilitation.” The documents further evince a lack of understanding by the Bar of its investigative role to completely and fully develop the facts and to verify the petitioner’s offer of proof prior to apprising this Court of its findings and recommendations. The petition and all supporting documents are to be carefully vetted, versus a passive acquiescence to the averments of the petitioner. The testimony and supporting documents of a petitioner should be verified for truthfulness and accuracy. The role of the Board of Bar Commissioners and the Bar to conduct a thorough investigation of a candidate as well as the legitimacy and propriety of the petitioner’s request is a role which should not be taken lightly or as a matter of routine. Prisock has failed to demonstrate by clear and convincing evidence that he is entitled to reinstatement.
 

 ¶ 23. The
 
 Benson
 
 factors as applied to the case sub judice are as follows:
 

 ¶ 24. (1) State the cause or causes for suspension or disbarment: In his Petition, Prisock sets forth the Rules of Professional Conduct which were violated and the factors surrounding each of the violations. Prisock has adequately stated the causes for his suspension.
 

 ¶ 25. (2) Give the name and current address of all persons, parties, firms or legal entities who suffered pecuniary loss due to the improper conduct: In this matter, three parties suffered harm due to Prisock’s conduct. In his petition, Prisock lists each of these three parties and their addresses. Only one of these parties, T.B., suffered any actual pecuniary loss due to Prisock’s conduct.
 

 ¶ 26. (3) Make full amends and restitution: Prisock and the Bar correctly pleaded that T.B. received restitution from Prisock, albeit without illuminating the truth,
 
 ie.,
 
 Prisock’s untimeliness in complying with the tribunal’s restitution order. Inspection of the exhibits reveals that the order to pay was rendered by the tribunal in 1994, yet Prisock inexplicably failed to .make restitution
 
 until
 
 August 2006,
 
 twelve years after being ordered to do so,
 
 which coincidentally was only a few months before Prisock’s petition for reinstatement was filed. The inference which can be drawn therefrom is that Prisock’s motivation was to fulfill reinstatement requirements, as opposed to compliance with the tribunal’s order and making amends to T.B.
 

 ¶ 27. To make amends is to make “reparation for insult, injury or loss.”
 
 Webster’s New College Dictionary
 
 36 (2001). To make restitution is “1. [a]n act of restoring to the proper owner something taken away, lost or surrendered. 2.[a]n act of repaying or compensating for loss, damage, or injury. 3.[a] return to or restoration of a former state or position.”
 
 Id.
 
 at 945. Although Prisock ultimately reimbursed T.B., albeit twelve years late, does this act justly satisfy the amends and restitution requirement? Was the act of repayment in compliance with an order to return or restore T.B. to her former state or position? While Prisock technically satisfied the restitution prong, it is questionable whether full amends were met by a twelve-year-delayed payment to a single mother raising a child without the benefit of court-ordered child support.
 

 ¶ 28. Prisock has reimbursed the Bar for the costs of proceedings, so in this regard, Prisock has satisfied this
 
 Benson
 
 factor.
 

 ¶29. (4) Shows the necessary moral character for the practice of law: Prisock “bears the burden of proving to
 
 *324
 
 this Court, by clear and convincing evidence, that he is rehabilitated and possesses the requisite moral character for reinstatement to the practice of law.”
 
 In re Coleman,
 
 949 So.2d 680, 683 (Miss.2006).
 

 ¶ 30. In his first deposition in this proceeding, Prisock stated since he moved to Texas after being suspended, he has made an effort to change his life. Prisock testified he “failed his first family” and that “moving to Texas was my chance for a clean slate, a do-over and I wanted to do it the right way.” Prisock remarried and stated he and his wife are very active members of their church in Texas. They are involved in the children’s ministry and regularly serve as church nursery volunteers. The Prisocks are also involved in an adult Bible fellowship through which they do much charity work, including work for Habitat for Humanity and victims of Hurricane Katrina. Prisock also is a member of a “growth group” at his church and a program called Dynamic Dads, which teaches fathers to be Christian role models for their children. In his deposition, Prisock asserted he performs twenty to thirty hours of church or charitable work a month.
 

 ¶31. The supplemental filings, however, do not support such a virtuous picture. They reveal the following:
 

 a) In June of 1994, Prisock was held in wilful contempt for violating the judgment of divorce by:
 

 i) Failure to pay alimony.
 

 ii) Failure to pay child support for a number of months in 1994.
 

 iii) Failure to pay his children’s and ex-wife’s medical bills.
 

 iv) Failure to pay pre-school, private school, and after-school care tuition for parts of 1993 and 1994.
 

 b) In September of 1994:
 

 i) A judgment was entered against Pri-sock in the amount of $4,038 for past-due child support, school tuition and daycare costs.
 

 ii) Prisock was ordered to sell property, with a percentage of the proceeds to be placed in an interest-bearing account to secure three years’ future payment of child support.
 

 c) In October of 1995, Prisock was again held in wilful contempt for:
 

 i) Failure to pay child support and medical insurance premiums for parts of 1994 and 1995.
 

 d) In February of 2000, Prisock was again held in contempt of court for:
 

 i) Failure to pay his children’s medical insurance premiums for all of 1997 through 1999, and parts of 2000.
 

 ii) Failure to pay his children’s medical and dental expenses not covered by insurance.
 

 iii) Prisock was also ordered to pay child-support arrearage with interest.
 

 e) In June of 2003, Prisock was held in wilful civil contempt for:
 

 i) Failure to pay his children’s dental expenses, medical expenses, and medical insurance premiums.
 

 ¶ 32. In a supplemental/second deposition taken by the Bar, Prisock blamed his ex-wife for not making demands or revealing expenditures. Prisock asserted, “I don’t think it was a single one of these that even went 24 hours needing being paid,” which is inconsistent with the supplemental documents considered by this Court. Assuming arguendo, some merit exists for his excuse of not receiving timely notice of medical and dental expenses, obligations such as tuition, medical insurance, and child support were known, recurring expenses.
 

 ¶ 33. Prisoek’s forthrightness regarding the Woodward matter also is questionable.
 
 *325
 
 In his first deposition taken while seeking reinstatement, Prisock testified that he believed Woodward had been wearing a cast on his right arm. Prisock testified that he should have stated to Chancellor Robinson that he “did not recall” if he actually saw Woodward sign the document. Prisock only admitted to the Tribunal that he
 
 “gave the impression
 
 ” to Chancellor Robinson that he had seen Woodward sign the document and that that “was the worst judgment that I’ve made in my entire life.” Prisock’s refusal to fully acknowledge that he furnished perjured testimony in the Chancery Court of Hinds County and to the tribunal, only then to offer a feeble excuse for his conduct that he was trying to “help the client” and protect his status as a notary, and that it was not his plan to lie when he entered the hearing, is unconvincing.
 

 ¶34. The supplemental filings reveal that Prisock filed for Chapter 7 bankruptcy in 1997, allegedly because he was “concerned about people filing lawsuits or claims from me closing my practice down. I filed a Chapter 7 just to kind of wipe the slate clean, that I’d be okay.” The bankruptcy was dismissed by motion of the trustee in 1998. Prisock again filed for bankruptcy in 1999, but later moved to have it dismissed because of a dispute with the Internal Revenue Service, which will be discussed
 
 infra.
 

 ¶ 85. Prisock currently is in a dispute with the IRS regarding taxes on his income for 1987, 1988 and 1992. Prisock stated he believed the dispute over his 1992 taxes has been resolved, but he is not sure, because he continues to make payments and “it’s hard to tell.”
 

 ¶ 36. Also included in the supplemental pleadings was a history of misdemeanor criminal charges against Prisock:
 

 a) In 1995, Prisock was convicted of unlawfully carrying a weapon. Prisock received deferred adjudication and six months probation, with a fine of $200.
 

 b) On two occasions in 1996, and then again in 1998 and 1999, Prisock was found to have committed theft by check in Texas. In each case, only after Prisock received notice of the proceedings did he make restitution, resulting in the cases being dismissed.
 

 ¶ 37. Regarding his mental/emotional health, Prisock has completed the therapy program which was ordered by the complaint tribunal. In addition to this therapy program, Prisock has completed a substance-abuse evaluation performed by the Redbird Program, which handles substance-abuse monitoring for the Texas State Bar. Prisock also has been evaluated by the Mississippi Lawyers and Judges Assistance Program. On January 16, 2007, Michael Bickers, a licensed psychotherapist, submitted an opinion to the Mississippi Lawyers and Judges Assistance Program in which he stated that Prisock was “cooperative throughout the process” and that Prisock “does not show any evidence supporting the criteria for alcohol dependence or alcohol abuse.” In his deposition, Prisock stated that he does not have a problem with alcohol, but that depression “was the hardest battle” and that he attends monthly, informal meetings sponsored by the Texas State Bar for attorneys with issues with substance abuse and depression.
 

 ¶ 38. Prisock has submitted twenty-two letters of recommendation along with his petition. In soliciting these letters, Pri-sock stated he informed each person of the reasons for his suspension and what he has done to better himself since the suspension. These letters were submitted by eight members of the Mississippi Bar, ten attorneys from out of state, and three non-
 
 *326
 
 attorneys. Each letter acknowledges Pri-sock’s effort to better himself, supporting his reinstatement to the Bar. One Mississippi attorney wrote, “Kerry Prisock has changed. He is truly sorry for his past mistakes and has worked to correct them. He will be a credit to the Bar when reinstated.” The Bar offered no evidence of inquiry to determine the truthfulness of these claims, and therefore, these claims are accepted without dispute.
 

 ¶39. Prisock testified he realized how important his law license was to him. He stated, “[P]art of being a new person and becoming the person you can be and you want to be, you’ve got to face your demons. And I knew I needed to come back [to Mississippi] ... it was the right thing to do, come back here and make things right.... ”
 

 ¶ 40. Subsequent to his suspension, Pri-sock moved to Texas, where he became employed by the Harmon Law Firm as a paralegal for five years. After his employment with the Harmon Firm, Prisock was employed by Double Diamond Company, where he prepared documents relating to real-estate transactions. This led to em--ployment with Richmond Title Services, where Prisock currently is employed. His job title and actions during this employment raise additional substantial impediments to his reinstatement.
 

 ¶41. At Richmond Title Services, Pri-sock is a licensed escrow officer. He stated that he performs tasks related to real-estate transactions under the supervision of the company’s general counsel. Prior to the initial hearing before the Tribunal, the Bar raised a concern as to Prisock’s job title at Richmond Title. Two of the letters attached to Priscock’s petition for reinstatement referenced Prisock as “Senior In-House Counsel” for Richmond Title. The use of this title is in contradiction with the suspension order, which stated Prisock was not to use his name “in any manner, in conjunction with the phrases ... ‘counsel- or at law, counselor ... ’ for the period of his suspension until such time as he is reinstated.”
 

 ¶ 42. In response to the Bar’s concern, Prisock submitted affidavits from the authors of the two letters which identified him as “Senior In-House Counsel.” The authors asserted they had not observed Prisock engaged in the unauthorized practice of law. Prisock submitted an additional affidavit from the general counsel for Richmond Title, which stated she had not observed Prisock engaged in the unauthorized practice of law and that she had advised Prisock not to render any legal opinions to the general public, or “to hold himself out to the public or any Richmond customer as an attorney or a member of any bar association.”
 
 [3]
 
 Prisock also submitted an affidavit which declared, “In light of the concerns voiced by the Mississippi State Bar and to avoid the appearance of impropriety, my job at Richmond Title Services, LP, has been changed to Legal Department Manager, at my request.”
 

 ¶ 43. The use and subsequent change in title led to separate inquiry regarding reciprocal discipline or the lack thereof. In his petition for reinstatement, Prisock stated he was licensed to practice in Tennessee, but he failed to mention that reciprocal discipline had been imposed. The reciprocal action by the Tennessee Bar was brought to light only after the Bar and Prisock were ordered to supplement the record.
 

 
 *327
 
 ¶ 44. Section 17 of the Tennessee Supreme Court Rules of Discipline holds that it is the duty of the disciplined attorney to inform the Tennessee Bar of any disciplinary action in another state, which Prisock failed to adhere to subsequent to the multiple disciplinary actions taken by the Mississippi Bar. Additionally, Mississippi Rule of Discipline 11(c) (emphasis added) states:
 

 (c) A disbarred, suspended or resigned attorney shall: (1) notify all clients of his disbarment, suspension or resignation and his consequent inability to act as an attorney after the effective date of his disbarment, suspension or resignation;
 

 (2) notify each client involved in pending litigation or administrative proceedings and the attorney or attorneys for each adverse party in such proceedings, of his disbarment, suspension or resignation and consequent inability to act as an attorney after the effective date of his disbarment, suspension or resignation;
 

 (3) advise each client promptly to substitute another attorney or attorneys in his place or to seek legal advice elsewhere; ft)
 
 notify all [ajjfected comts and agencies of his disbarment, suspension or resignation and consequent inability to act as an attorney after the effective date thereof;
 
 and (5) give such other notice as the disciplinary agency last having jurisdiction may direct in the public interest.
 

 ¶ 45. In the files regarding the complaints which originally led to Prisock’s suspension, there is no reference to Pri-sock’s Tennessee license or notice to the Tennessee Bar that Prisock had been suspended in Mississippi. In his supplemental deposition in this proceeding, Prisock was asked if he informed the Mississippi Bar of his Tennessee license, and he stated he did not recall. He unsuccessfully attempts to shift his duty to the Bar by claiming it was his understanding that it was the responsibility of the Mississippi Bar to inform Tennessee of his suspension, a position totally inconsistent with the Tennessee rules.
 

 ¶ 46. Prisock further testified that after he was suspended in Mississippi, he did not receive notice he would be suspended in Tennessee. However, “I treated it— once we had the 18 month suspension from the Tribunal, I closed up practice. As far as I was concerned, I was suspended across the board.” However, in the same deposition, Prisock contrarily testified that to his knowledge, he held a valid law license in Tennessee from 1994 until 2006, subject to three administrative suspensions in 1992, 1996, and 2004 for failure to pay dues and failure to file continuing legal education exemptions. The record fails to reveal the length or dates of the administrative suspensions by the Tennessee Bar, although documents obtained in the supplemental filings reveal Prisock claimed admission to the Tennessee Bar throughout the years of 1992 through 2006.
 

 ¶ 47. Although Prisock stated he treated his discipline in Mississippi as a “suspension across the board,” Prisock advised others he was licensed in Tennessee to practice law. Included in the supplemental filings requested by this Court was Prisock’s 2002 application for employment at Double Diamond, in which he averred that he held a Tennessee law license. Additionally, in the supplemental filings, copies of correspondence Prisock issued while employed by Richmond Title stated he was “General Counsel,” and “Admitted to practice in Tennessee only” from 2004 until his Tennessee suspension in March of 2006.
 

 ¶ 48. In 2005, Richmond Title was named in a lawsuit which alleged fraudulent investment schemes. Prisock had notarized several property-conveyance documents at issue in the suit. It is Prisock’s
 
 belief
 
 that the attorneys for the plaintiffs
 
 *328
 
 learned of his Mississippi suspension, as the complaint was later amended to name Prisock individually. The plaintiffs alleged Prisock notarized a forged signature on a property conveyance.
 
 [4]
 
 After the filing of the amended complaint, Prisock learned Tennessee was initiating reciprocal discipline against him. Prisock stated he
 
 believed
 
 the attorneys for the plaintiffs did some “background work on me. They decided that they felt like Tennessee did not impose reciprocal discipline and brought that to the attention of the Tennessee Bar.” His account of how Tennessee learned of the Mississippi disciplinary action is of no consequence, for it only confirms that Prisock had not notified the Tennessee authorities.
 

 ¶49. On March 6, 2006, the Supreme Court of Tennessee entered an order suspending Prisock from the practice of law in Tennessee for a term of eighteen months, concurrent with his suspension in Mississippi, which is still in force. The order further stated that if Prisock wished to practice in Tennessee again, he would have to apply for reinstatement pursuant to Rule 9 of the Rules of the Tennessee Supreme Court and that the Tennessee Court might consider compliance with the conditions imposed by Mississippi for reinstatement.
 

 ¶ 50. Subsequent to discipline being imposed in Tennessee, Prisock retained Tennessee counsel. Prisock’s counsel stated that he believed that Prisock, under the rules of the Tennessee Supreme Court, was entitled to a hearing before a three-judge panel before discipline was imposed. However, Prisock’s discipline was referred to a single Tennessee Supreme Court Justice who suspended Prisock’s Tennessee license for an eighteen-month period. Pri-sock further requested and was later denied a hearing before the entire Tennessee Supreme Court, which he now claims was a denial of his due-process rights.
 

 ¶ 51. After being disciplined in Tennessee, “General Counsel” and “Admitted to practice in Tennessee only” was redacted from Prisock’s stationery at Richmond Title. Prisock’s stationery was then changed to read “Senior In-House Counsel,” with a notation at the top of each piece of correspondence, reading, “
 
 *
 
 Not admitted to practice in
 
 (State).”
 
 Presumably, the blank would be filled in with the name of the state to which the correspondence was being sent. The letterhead
 
 dearly
 
 implied that Prisock was licensed to practice in a state other than the home state of the recipient. It was only after the Bar raised this concern that Prisock’s title changed to “Manager, Legal Department,” even though his stationery continued to note, “ * Not admitted to practice in
 
 (State).”
 

 ¶ 52. Prisock claims he rendered no legal opinions to the public. Prisock testified by affidavit in support of his initial petition that “[a]ny correspondence clearly indicates that I am not a member of the Bar....” In his supplemental deposition with the Bar, Prisock was asked to speak to the notation on his stationery which implied he was licensed to practice. Pri-sock disavowed such interpretation, stating, “I never thought of it giving that impression,” and that it “wasn’t my intent to give an inference or impression that I was a member of a Bar somewhere,” an impression or inference which this Court finds disingenuous and unacceptable.
 

 ¶ 53. While the Bar states it expressed concern about Prisock’s use of the title “Senior In-House Counsel,” the Bar asserted in its initial answer that there was no clear and convincing evidence that Pri-sock engaged in the practice of law while
 
 *329
 
 suspended. The Bar’s conclusion is manifestly in error based upon the overwhelming weight of the evidence to the contrary. The Bar erroneously applies the “clear and convincing” burden, a legal error. It is
 
 Prisoclc’s
 
 burden to prove by clear and convincing evidence that he adhered to the order of the complaint tribunal not to engage in the unauthorized practice of law. Given the evidence in this case, Prisock fails to meet this burden. After reviewing the supplemental documents and taking a second deposition, the Bar stated Prisock’s title and stationery remained “areas of concern,” but that because Prisock admitted in his deposition that it was not his intention to mislead anyone, the Bar would maintain its position that Prisock should be reinstated.
 

 ¶ 54. (5) Demonstrates the requisite legal education to be reinstated to the privilege of practicing law: Pursuant to Mississippi Rule of Discipline 12.5, Prisock was required to take and pass the Multi-state Professional Responsibility Exam with a scaled score of 80. Prisock completed this exam with a scaled score of 93.
 

 ¶ 55. In addition to his legal employment, Prisock submits he has kept abreast of developments in the law by undertaking extensive legal education. Prisock states he attends seminars hosted by the Dallas Bar Association and that he attended the Texas State Bar Advanced Real Estate Law Course. As a licensed escrow officer in Texas, Prisock attends the seminars for their continuing education program. This office also requires Prisock to attend the legislative and attorney sections of the annual meetings for licensed escrow officers, which would qualify him for fifteen hours of continuing legal education credit for the Texas Bar Association. Prisock also testified in his deposition that he regularly reads the opinions of this Court and the Mississippi Court of Appeals and that because of his job, he has been “proactive in reading legislation ... for Mississippi as well as the other 49 states.”
 

 ¶ 56. Finally, Prisock has indicated his future plans are to stay in Texas and to sit for the Texas State Bar Exam. However, the State of Texas has denied Prisock’s application to take the Bar exam.
 
 [5]
 
 On his application dated March 30, 2007, under the heading “Type of Applicant,” Prisock stated he is a “licensed Attorney in another U.S. jurisdiction.” However, later in the application, Prisock disclosed his suspensions in Mississippi and Tennessee. Even so, he listed his “Current Status” as “Active” in the Federal Court for the Northern District of Texas.
 

 ¶ 57. In a letter sent in May 2007 to the Board of Texas Bar Examiners, counsel for Prisock stated that Prisock will make application for reinstatement at an early date in Tennessee and that he had “undertaken steps to secure the reinstatement of his license by the State of Mississippi with the expectation that a favorable ruling from the Mississippi Supreme Court will be forthcoming in the very near future.” Prisock states his opportunities at his current job are limited without a law license, and that if he is reinstated in Mississippi, he will be better able to assist his company in moving into the real estate market in
 
 *330
 
 Mississippi. Prisock testified in his supplemental deposition that it is his hope that he can reinstated in Mississippi and then Tennessee, and then he will be allowed to take the Texas Bar Exam.
 

 ¶ 58. Prisock testified he has “rediscovered his love for the law.” If his reinstatement is denied, Prisock testified he will “continue to improve” and “reapply-this is a part of me I’ve got to make right.”
 

 CONCLUSION
 

 ¶ 59. Based upon the evidence in this case, it is obvious the Bar has passively accepted the testimony of Prisock without question or investigation. It is the duty of the Bar, acting as complaint counsel, to “investigate complaints, prosecute formal complaints, and discharge other duties assigned by the Board of Bar Commissioners. Complaint counsel shall conduct any investigation or investigatory hearing fairly and impartially and shall seek to elicit any and all facts which might be exculpatory or incriminatory of the accused attorney. ...” M.R.D. 5. Prisock attempted to mislead the Bar and this Court, and the Bar, through limited investigation, accepted Prisock’s averments. However, Pri-sock’s actions contradict his words by his unwillingness to be forthright, and this will not be tolerated by this Court.
 

 ¶ 60. Although it is the position of the Mississippi Bar that Prisock should be reinstated, “[t]his Court retains exclusive jurisdiction and is the ultimate judge of attorney discipline matters, pursuant to Rule 1(a) of the Rules of Discipline for the Mississippi State Bar .... [and] [t]his Court is free to modify the punishment as needed to best serve the interests of the Bar and the public.”
 
 Miss. Bar v. Hodges,
 
 949 So.2d 683, 685 (Miss.2006) (citations omitted). This Court cannot agree with the Bar’s conclusion that Prisock has demonstrated “by clear and convincing evidence, that he is rehabilitated and possesses the requisite moral character for reinstatement to the practice of law.”
 
 In re Coleman,
 
 949 So.2d at 683. Prisock’s Petition for Reinstatement is therefore denied.
 

 ¶ 61. KERRY L. PRISOCK’S PETITION FOR REINSTATEMENT TO THE PRIVILEGE OF PRACTICING LAW IN THE STATE OF MISSISSIPPI IS DENIED.
 

 SMITH, C.J., WALLER, P.J., CARLSON, DICKINSON AND LAMAR, JJ., CONCUR. DIAZ, P.J., EASLEY AND GRAVES, JJ., DISSENT WITHOUT SEPARATE WRITTEN OPINION.
 

 [1]
 

 . Mississippi Rule of Discipline 12.8 states, "Upon receipt of the reinstatement petition, the Court shall allow the Board of Bar Commissioners thirty (30) days within which to conduct an investigation and fully answer the petition. After filing pleadings or notice on behalf of the Bar, the proceedings shall continue, if necessary or desirable, as the Court may direct and the Court, in its discretion, may grant or deny the petition as circumstances and justice require.”
 

 [2]
 

 . Initials will be used as this case involved a minor.
 

 [3]
 

 . The supplemental filings, which included correspondence from Prisock to Richmond customers, evidenced numerous letters authored by Prisock which stated he was Senior or General In-House Counsel for Richmond Title.
 

 [4]
 

 . The lawsuit against Prisock and Richmond Title subsequently was settled and dismissed.
 

 [5]
 

 . Rule IV(e)(2) of die Rules Governing Admission to the Bar of Texas states, in pertinent part, "An individual who has been disciplined for professional misconduct in the course of practicing law is deemed not to have present good moral character and fitness and is ineligible to file an Application for Admission to the Texas Bar during the period of such discipline imposed by such jurisdiction, and in the case of disbarment, until the disciplined individual has properly filed an application for re-licensure in the disciplining jurisdiction, in accordance with the procedures established for re-licensure in that jurisdiction, and has obtained a final determination on that application.”