# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2020-BR-00270-SCT

*M. REID STANFORD*

*v.*

*THE MISSISSIPPI BAR*

ATTORNEYS FOR PETITIONER:    ANDREW J. KILPATRICK
    M. REID STANFORD
ATTORNEY FOR RESPONDENT:    ADAM B. KILGORE
NATURE OF THE CASE:    CIVIL - BAR MATTERS
DISPOSITION:    REINSTATEMENT GRANTED - 04/01/2021
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1.    M. Reid Stanford petitions the Court for the second time, seeking reinstatement to the Mississippi Bar. The Mississippi Bar supports Stanford's petition for reinstatement and takes the position that Stanford has satisfied his burden of proof for both moral and professional rehabilitation and has presented evidence warranting his reinstatement. We reinstate Stanford to the practice of law.

## FACTS AND PROCEDURAL HISTORY

¶2.    On September 1, 2017, the Court and a Complaint Tribunal suspended Stanford from the practice of law following a complaint that arose due to his mishandling of clients' money. In 2018, Stanford applied for reinstatement by the Court but was denied, because Stanford failed to satisfy each jurisdictional requirement for reinstatement to the practice of law.

***Stanford v. Miss. Bar***, 308 SO. 3d 429 (Miss. 2019). Again, the basis for Stanford's

suspension is as follows:

> Mr. Stanford owned a 40% interest in MREC, Inc., a real estate closing company. MREC, Inc. held a 40% interest in Mississippi Real Estate Closings of Hattiesburg, LLC . . . . MREC, Inc. also held a 40% interest in Mississippi Real Estate Closings of Columbus, LLC; Mississippi Real Estate Closings of Greenwood, LLC; Mississippi Real Estate Closings of Grenada, LLC; Mississippi Real Estate Closings of Hernando, LLC; Mississippi Real Estate Closings of Oxford, LLC; Mississippi Real Estate Closings of Senatobia, LLC; Mississippi Real Estate Closings of Southaven, LLC and Mississippi Real Estate Closings of Tupelo, LLC.
>
> With the approval of Stewart Title Guaranty Company . . . , Mr. Stanford elected to use a sweep account for all of the real estate closing businesses' escrow accounts. All of the available funds in each escrow account were "swept" from the accounts daily following the close of business and place into an investment account. When a check payable on any individual account was presented for payment[,] funds sufficient to pay the check were "swept" back into the account without regard as to which loan closing company had deposited the funds.
>
> On March 6, 2009, Grand Bank for Savings, FSB ("Grand Bank") entered into a transaction with SP Properties and Russell Roberts ("Roberts") to purchase certain property in Lamar County, Mississippi. During the transaction, a dispute arose over the availability of parking. Roberts and Grand Bank contacted Mr. Stanford and asked if $100,000.00 of the loan proceeds could remain in the escrow account of [Mississippi Real Estate Closings of Hattiesburg, LLC]. The settlement statement for the transaction betweenGrand Bank and the Roberts reflects the $100,000.00 from the sale proceeds to be held in escrow by [Mississippi Real Estate Closings of Hattiesburg, LLC,] related to the parking issue. When Grand Bank and Roberts failed to resolve the parking issue, [Mississippi Real Estate Closings of Hattiesburg, LLC,] attempted to interplead the escrowed funds on April 29, 2009; however the escrowed funds were not available to deposit with the Chancery Court.
>
> Between March 6, 2009, when the $100,000.00 from the Grand Bank transaction was deposited[,] and April 29, 2009, when [Mississippi Real Estate Closings of Hattiesburg, LLC,] attempted to interplead the funds, an employee at [Mississippi Real Estate Closings of Tupelo, LLC,] failed to make a deposit of approximately $587,000.00[,] making the [Mississippi Real Estate Closings

2

of Tupelo, LLC,] account deficient to cover the checks and wires from the closing. When checks and wires for the Tupelo closing were presented for payment, the [Mississippi Real Estate Closings of Tupelo, LLC,] account had insufficient funds to pay the proceeds from the closing. As a result, the sweep account automatically used money from the other real estate closing businesses' accounts to cover the Tupelo error, again without regard as to which company had deposited the funds. This necessarily included the $100,000.00 held in escrow by [Mississippi Real Estate Closings of Hattiesburg, LLC,] for Grand Bank and Roberts.

Upon learning of the problem, Mr. Stanford closed the sweep account, but at that point, neither Mr. Stanford nor anyone else was able to determine what portion of the remaining funds belonged to which real estate closing business or any party to any real estate transactions being conducted by those businesses. Eventually, $80,000 was found in the account of Mississippi Real Estate Closings of Southaven, LLC, but the distribution of the full $100,000 has still not been accounted for to date.

*Id.* at 430-32 (¶ 2) (alterations in original).

¶3. Following the disposition of Stanford's first petition, Stanford filed a motion for rehearing and for a stay of further proceedings on January 29, 2019. Stanford's motion was denied by the Court on March 7, 2019. Now, more than one year has passed since the adverse decision, and in accordance with the Mississippi Rule of Professional Conduct 12.6, Stanford petitions the Court for the second time seeking reinstatement.

¶4. In his second petition, Stanford explained the conduct leading to his discipline, represented his compliance with the requirements imposed by the order, and submitted seventeen letters of recommendation supporting his reinstatement. And since the Court determined that Stanford failed to make full amends, Stanford submitted additional proof that he has identified the individual that suffered harm and has made full amends. After Stanford's second petition, the Mississippi Bar conducted a second investigation and deposed

Stanford. The Bar now takes the position that Stanford "adequately set forth that Mr. Roberts was the only individual that suffered harm and that . . . amends and restitution have now been made."

¶5. The Bar additionally supports that Stanford "has the requisite moral character and mental health for the practice of law." The Bar's final position and recommendation is as follows:

> The Petitioner, Mr. Stanford, bears the burden of proving to the Supreme Court, by clear and convincing evidence, that he is rehabilitated and that he possesses the requisite moral character which entitles him to be reinstated to the practice of law. Mr. Stanford's Petition, accompanying exhibits, and his testimony must demonstrate by clear and convincing evidence that Mr. Stanford possesses the requisite "firm resolve to live a correct life evidenced by outward manifestation sufficient to convince a reasonable mind clearly that [he] has reformed." *Williams v. Miss. State Bar Ass'n*, 492 So. 2d 578, 580 (Miss. 1986).

> The Bar supports Mr. Stanford in his quest for reinstatement to the practice of law. Mr. Stanford has satisfied his burden of proof to show that he is worthy of reinstatement and has presented evidence to support that he has achieved the moral and professional rehabilitation to return to the practice of law. Mr. Stanford has readily admitted responsibility for the actions which led to his suspension. While Mr. Stanford's ethical violations were of a serious nature warranting discipline, his pursuit of rehabilitation of his own life, as well as his outreach to his church community are noteworthy.

> It is the Bar's position that Mr. Stanford has satisfied his burden of proof of both moral and professional rehabilitation required of a suspended attorney. Likewise, Mr. Stanford has met his burden of presenting evidence warranting his reinstatement to the practice of law. Therefore, the Bar supports his reinstatement.

## DISCUSSION

¶6. The Court has exclusive and inherent jurisdiction over matters "pertaining to attorney discipline, reinstatement, and appointment of receivers for suspended and disbarred

4

attorneys[.]" ***Stanford***, 308 So. 3d at 432 (¶ 4) (internal quotation marks omitted) (quoting

***In re Reinstatement of Watkins***, 849 So.2d 843, 845 (¶ 8) (Miss. 2002)). "Under

Mississippi Rule of Discipline 12, an attorney who has either been suspended or disbarred

for six months or longer must petition this Court in order to be reinstated and demonstrate

compliance with any related sanctions." ***In re Benson***, 890 So. 2d 888, 889-90 (¶ 4) (Miss.

2004). Additionally, the Court reviews attorney reinstatement petitions de novo. ***Id.*** And

the Court has required a petitioner to satisfy five jurisdictional requirements for

reinstatement:

> (1)     state the cause or causes for suspension or disbarment;
>
> (2)     give the name and current address of all persons, parties, firms, or legal entities who suffered pecuniary loss due to the improper conduct;
>
> (3)     make full amends and restitution;
>
> (4)     show that he has the necessary moral character for the practice of law; and
>
> (5)     demonstrate the requisite legal education to be reinstated to the privilege of practicing law. Though not a jurisdictional requirement, we consider the Bar's position as to reinstatement as a factor in determining whether to grant the petition.

***In re Benson***, 890 So. 2d at 890 (¶ 6).

### 1.     Cause for Suspension

¶7.     During the deposition with the Bar and in his petition, Stanford provided an adequate

account for the underlying actions that resulted in his suspension. The Bar's position is that

Stanford satisfied the cause-for-suspension requirement; we agree.

### 2.     Names and Addresses of All who Suffered Pecuniary Loss

5

¶8.    While Stanford failed to support his prior petition with the proper address for the individual who suffered pecuniary loss, he has properly supported the instant petition with the correct name and address for the individual involved. The Court holds that Stanford has met the jurisdictional requirement to provide the name and address of the individual suffering pecuniary loss.

### 3.    Full Amends and Restitution

¶9.    Stanford's first petition failed to satisfy the requirement to make full amends and restitution. *Stanford*, 308 SO. 3d at 434 (¶ 12). There, Stanford's restitution was actually $100,000, but the parties settled for $75,000 after drawn-out litigation with Stanford's insurance provider. *Id.* at 433-34 (¶ 10). In determining that Stanford failed to make full amends and restitution, the Court reiterated its "hardline approach to restitution." *Id.* at 434 (¶ 11).

¶10.    "[T]o make restitution is '1. [a]n act of restoring the proper owner of something taken away, lost, or surrendered. 2. [a]n act of repaying or compensating for loss, damage, or injury. 3. [a] return to or restoration of a former state or position.'" *Id.* (second, third, and fourth alterations in original) (internal quotation marks omitted) (quoting *In re Prisock*, 5 So. 3d 319, 323 (¶ 27) (Miss. 2008)). Today, however, Stanford has satisfied the amends-and-restitution requirement. He supported his petition with evidence that he paid the individual the remaining balance left over after the $75,000 settlement, which was $25,000. In addition to the $25,000, Stanford paid the individual $40,000, representing legal fees that the individual had incurred during the initial settlement with Stanford's insurance provider.

6

### 4. Necessary Moral Character for Law Practice

¶11. The fourth requirement demands that Stanford prove he has the necessary moral character to practice law. For the current petition, the Bar's answer contemplated Stanford's employment since suspension, civic and charitable involvement, recommendation letters, and his mental and emotional status.

¶12. Stanford states that he mainly works in "environmental consulting," which includes coordinating with experts and attorneys. But Stanford stated that he has closed his office and removed signs, has communicated with more than 120 clients concerning his suspension, and has notified courts in which matters were pending. In addition, Stanford took steps to maintain the distinction that he was not engaging in the practice of law regarding his consulting ventures since suspension.

¶13. Since his petition was denied, Stanford has been more active in his church community, assisting with the church's choir and sound systems and providing general assistance to the pastor or members in need. Stanford asserts that COVID-19 has precluded more activity, but he remains involved in a Bible study and distributes fruit on a weekly basis to people in need.

¶14. And while Stanford supported his first petition with twelve letters of recommendation, Stanford now provides seventeen. Beyond that, Stanford's mental and emotional state "appeared to be mentally and emotionally stable during his deposition[,]" and he stated that he is healthy and does not drink or use illicit drugs.

¶15. The Bar recommends that Stanford has satisfied the fourth requirement, demonstrating the necessary and moral character for law practice; we agree.

7

### 5.     Requisite Legal Education

¶16.     The last requirement demands that Stanford demonstrate that he has the requisite legal education for reinstatement.  Stanford testified that he has maintained his continuing legal education throughout his suspension, has remained current on environmental-law matters, and has kept up-to-date with Supreme Court rulings and legal articles.  In addition, Stanford retook and passed the Multi-State Professional Responsibility Exam.  The Bar asserts that Stanford satisfied the fifth requirement; we agree.

¶17.     After all requirements are considered, as stated above, we take the Bar's overall recommendation into consideration, which supports Stanford's petition for reinstatement and maintains that he has satisfied each of the above requirements.

### CONCLUSION

¶18.     We grant Stanford's petition for reinstatement to the practice of law.

¶19.     **PETITION OF M. REID STANFORD FOR REINSTATEMENT TO THE PRACTICE OF LAW IN THE STATE OF MISSISSIPPI IS GRANTED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**